IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORREEN SPECE, | : | No. 3:18cv1606 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| LEHIGH VALLEY HEALTH NETWORK, INC., LEHIGH VALLEY HOSPITAL – SCHUYLKILL, and ROBERT KARETSKY, | : | |
| Defendants | : | |

## MEMORANDUM

Before the court for disposition is a partial motion to dismiss plaintiff's amended complaint filed by Defendants Lehigh Valley Health Network, Inc., Lehigh Valley Hospital – Schuylkill, and Robert Karetsky. The parties have briefed the pending motion and it is ripe for disposition.

**Background**

This employment discrimination case arises from events that occurred while the plaintiff worked at Lehigh Valley Hospital in Pottsville, Pennsylvania. Plaintiff Correen Spece worked as a Pharmacy Technician for Defendant Lehigh Valley Health Network, Inc., since 2001. (Doc. 13, Am. Compl. ¶ 12). At all relevant times, Defendant Robert Karetsky supervised the plaintiff during her employment. (Id. ¶ 15).

Plaintiff suffers from migraines, anxiety disorder, depression, gastro paresis meniscus tears, and degenerative disc disease. (Id. ¶ 17). She takes several prescription medications to treat her medical issues. (Id. ¶ 28). The defendants were aware of the plaintiff's medication usage and serious health problems, and erroneously concluded that the plaintiff suffered from a drug addiction. (Id. ¶ 22).

Plaintiff's husband, Michael Spece, also suffers from disabilities. (Id. ¶ 24). He suffers from perineal nerve damage, degenerative back disease, and back surgery failure syndrome. (Id.) Throughout plaintiff's employment, plaintiff took leave from work to provide care for her husband. (Id. ¶ 26). In December of 2016, the plaintiff applied for and was granted protected leave to care for her husband pursuant to the Family and Medical Leave Act (hereinafter "FMLA"). (Id. ¶ 36).

In the months that followed, the plaintiff had several absences and late arrivals to work due to complications from her personal medical issues. (Id. ¶ 38). On numerous occasions, she requested FMLA leave for her own disabilities. (Id. ¶ 40). The defendants told her, however, that she was only permitted to have one FMLA certification per year, and that because she had FMLA leave in place for her husband, she could not also have FMLA leave approved for her own disabilities. (Id. ¶ 41). Thus, the plaintiff never applied for FMLA leave for herself. (Id. ¶ 43). By March of 2017, the defendants had required the plaintiff to undergo

several non-random drug tests. (Id. ¶ 90). She was forbidden from handling intravenous drugs, harassed, and the defendants changed her work shift. (Id. ¶¶ 33, 140).

On March 29, 2017, the defendants suspended the plaintiff from work for allegedly filling her personal prescriptions at the hospital without making immediate payment. (Id. ¶ 55). The plaintiff contends that her actions were consistent with the defendants' policy and practice, and that she and several other employees had been filling prescriptions and paying for them at a later date for several years. (Id. ¶ 51). Nevertheless, the defendants terminated the plaintiff's employment on April 7, 2017. (Id. ¶ 52). The plaintiff had again requested FMLA leave for her disabilities one week prior to her termination. (Id. ¶ 42).

Based on the foregoing facts, the plaintiff filed a ten-count amended complaint on November 8, 2018, alleging violations of Section 504 of the Rehabilitation Act of 1973; violations of the Americans with Disabilities Act of 1990; violations of the Pennsylvania Human Relations Act; and violations of the FMLA. (Doc. 13). On November 21, 2018, the defendants filed the instant motion to dismiss Counts II and VI, plaintiff's association discrimination claims, as well as Counts IX and X, plaintiff's FMLA claims.

**Jurisdiction**

Because this case alleges a violation of the Americans with Disabilities Act of 1990, (hereinafter "ADA"), 42 U.S.C. § 12101 et seq., the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

The defendants filed their motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, " 'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.' " Colburn v. Upper Darby Twp., 838 F.2d 663, 665–66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must

4

describe " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234–35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim establishing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted).

**Discussion**

The defendants move to partially dismiss the plaintiff's amended complaint. Specifically, the defendants move to dismiss Counts II and VI, plaintiff's "association discrimination claims," as well as Counts II and VI, plaintiff's claims arising under the FMLA. For the following reasons, we will deny the defendants' motion.

> I. **Counts II and VI - Association Discrimination Claims**

Count II of the plaintiff's amended complaint raises an association discrimination claim pursuant to the Rehabilitation Act of 1973. Count VI raises an association discrimination claim pursuant to the ADA. When a plaintiff sues under both the Rehabilitation Act and the ADA, due to their close similarity of language and purpose, courts may "address both claims in the same breath." See Berardelli v. Allied Services Institute of Rehab. Medicine, 900 F.3d 104, 117 (3d Cir. 2018) (quoting Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. Of Educ., 587 F.3d 176, 189 (3d Cir. 2009)). Because the scope of protection afforded under both statutes is materially the same, we will analyze Count II and Count VI under an ADA statutory framework.

The ADA prohibits employers from taking adverse employment actions against employees because of their own disabilities, as well as employees deemed protected "because of the known disability of an individual with whom

the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112 (b)(4). This type of discrimination has been referred to as "association" discrimination. See Erdman v. Nationwide Ins. Co., 582 F.3d 500, 510 (3d Cir. 2009). Here, the defendants move to dismiss plaintiff's association discrimination claims arguing that the plaintiff has failed to plead any facts that could give rise to an inference that her husband's disability was a factor with respect to any adverse employment action by the defendants.

To establish a prima facie case of association discrimination, a plaintiff must prove the following: "(1) the plaintiff was "qualified" for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by [her] employer at the time to have a relative or associate with a disability; (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." Erdman v. Nationwide Ins. Co., 621 F. Supp. 2d 230, 234 (M.D. Pa. 2007), *aff'd*, 582 F.3d 500 (3d Cir. 2009).

The plaintiff contends that her amended complaint alleges more than enough facts to raise a reasonable expectation that discovery will reveal evidence of each necessary element mentioned above. We agree. The plaintiff's amended complaint alleges that the defendants were aware that the

7

plaintiff's husband was an individual with a disability. (Doc. 13, Am. Compl. ¶ 25). Throughout her employment, the plaintiff provided care for her disabled husband and took leave from work to provide that care. (Id. ¶ 26). Then, in December of 2016, the plaintiff applied for and received FMLA protected leave to care for him. (Id. ¶ 36). While she was approved for this leave, the plaintiff was instructed that she could not apply for additional leave for her own serious medical conditions because she had already taken leave for her husband's disability. (Id. ¶ 41). The plaintiff further alleges that the defendants restricted and changed her job duties and ultimately terminated her employment because they believed that her husband's disabilities would cause them inconvenience by distracting the plaintiff from doing her work. (Id. ¶ 27).

In light of the abovementioned analysis, we find that the plaintiff has adequately pled her association discrimination claims in Counts II and VI. The defendants' motion to dismiss these claims will be denied.

## II.  Counts IX and X – FMLA Claims

Also in her amended complaint, plaintiff brings both interference and retaliation claims pursuant to the FMLA. The FMLA contains two distinct provisions prohibiting employers from: (1) interfering with an employee's exercise of her right to take reasonable leave for medical reasons; and (2) discriminating or retaliating against an employee who exercises this right. 29 U.S.C. § 2615(a);

see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F. 3d 294, 301 (3d Cir. 2012); Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005).

The defendants first argue that plaintiff's FMLA interference claim in Count IX is identical to her FMLA retaliation claim in Count X and should therefore be dismissed as moot. We disagree. Where a plaintiff presents both an interference claim and a retaliation claim on the basis that a defendant took adverse employment action against her because she requested FMLA leave, we analyze those claims as a single FMLA retaliation claim. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 147 (3d Cir. 2004) (plaintiff claimed that his FMLA leave was used by the employer as a negative factor in the decision to discharge him, thus the court characterized the claim as a retaliation claim rather than an interference claim).

Here, however, the plaintiff has clearly pled two distinct claims. First, under Count IX, the plaintiff claims that when she attempted to apply for FMLA leave for her own disabilities, the defendants misled her into believing that she couldn't do so. Specifically, the defendants told the plaintiff that she was only permitted to have one FMLA certification per year, and because she had FMLA leave in place for her husband, she could not take FMLA leave for her own disabilities. (Doc. 13, Am. Compl. ¶¶ 130-34). Thus, the plaintiff never formally applied for FMLA leave for her disabilities. (Id.) This constitutes plaintiff's FMLA interference claim.

9

Under Count X, on the other hand, the plaintiff alleges that the defendants took adverse employment actions against her, like changing her work shift and subjecting her to non-random drug tests, because she used FMLA leave to care for her husband. (Id. ¶ 140). Also under this claim, the plaintiff alleges that the defendants terminated her employment because she requested FMLA leave for her own disability. (Id. ¶ 143). These allegations make up plaintiff's FMLA retaliation claim. These are two separate claims, and we will therefore analyze them as such.

### A. FMLA Interference

As noted above, the defendants move to dismiss plaintiff's FMLA interference claim. To assert a claim for FMLA interference, the plaintiff must establish: "(1) [s]he was an eligible employee under the FMLA; (2) the defendants were an employer subject to the FMLA's requirements; (3) [s]he was entitled to FMLA leave; (4) [s]he provided notice to the defendants of h[er] intention to take FMLA leave; and (5) [s]he was denied benefits to which [s]he was entitled under the FMLA." Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (citations omitted).

The defendants appear to contest the notice element, arguing that the plaintiff has failed to plead enough facts regarding her requests for FMLA protected-leave. We disagree. The plaintiff has alleged that due to her

disabilities, the plaintiff had occasional absences and late arrivals at work. (Doc. 13, Am. Compl. ¶ 38). On numerous occasions, the plaintiff requested that the defendants provide her FMLA leave for her condition. (Id. ¶¶ 127-29). At this point, the defendants told the plaintiff that she was only permitted to have one FMLA certification per year, and that because she had FMLA leave in place for her husband, she could not have FMLA leave for her own condition. (Id. ¶ 41). The plaintiff continued to request FMLA protected leave up to one week before her termination. (Id. ¶ 42). We find that these facts sufficiently assert, at this stage, that the plaintiff provided notice to the defendants of her intention to take FMLA leave.

Additionally, the defendants contend that plaintiff's pleading does not demonstrate that she suffered prejudice due to the alleged interference, which they argue is fatal to her claim. It is well-settled in the Third Circuit that a plaintiff may only "show an interference with his right to leave under the FMLA, within the meaning of 29 U.S.C. § 2615(a)(1), if [s]he is able to establish that this failure to advise [of her rights under the FMLA] rendered h[er] unable to exercise that right in a meaningful way, thereby causing injury." Conoshenti, 364 F.3d at 143. Here, the plaintiff alleges that she did not apply for FMLA leave for her disabilities because she was misled to believe that she was not able to do so due to her

11

prior application for her husband. Accepting the plaintiff's allegations as true for the purposes of this motion, we find this to be a sufficient pleading of prejudice.

As such, we will deny the defendants' motion to dismiss Count IX, plaintiff's FMLA interference claim.

**B. FMLA Retaliation**

Finally, the defendants move to dismiss Count X, plaintiff's FMLA retaliation claim. To properly present an FMLA retaliation claim, the plaintiff must assert that: (1) she engaged in a protected activity under the FMLA; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). The plaintiff alleges that she engaged in two forms of protected conduct: (1) taking FMLA leave to care for her husband in 2016 and (2) requesting leave for her own disabilities. The defendants contend that the plaintiff has failed to show a causal nexus between either.

To demonstrate a causal connection, a plaintiff generally must establish either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism following the protected conduct. See Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014); Kachmar v. SunGard Data Systems, Inc., 109 F.3d

173, 177 (3d Cir. 1997); see also Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196 (3d Cir. 2015) (noting that causation may be established by suggestive timing or other circumstantial evidence that supports the inference of retaliation). "Whether a causal link exists 'must be considered with a careful eye to the specific facts and circumstances encountered.' " Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000)). The Third Circuit has also emphasized that:

> [I]t is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.... When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

Kachmar, 109 F.3d at 178.

Regarding temporal proximity, the Third Circuit has held that an adverse employment action occurring within ten days from the date of the protected action is unusually suggestive. See, e.g., Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (ten days viewed as unusually suggestive); Lichtenstein, 691 F.3d at 307 (determining that termination less than a week after the plaintiff invoked her right to FMLA leave established causation).

We first look at whether the plaintiff has demonstrated a causal connection between her December 2016 request for FMLA leave to care for her husband and the adverse employment actions from which she suffered. The plaintiff

13

contends that beginning in March 2017, the defendants denied her FMLA leave for her own serious medical conditions, subjected her to non-random drug tests, changed her work shift, harassed her, and terminated her employment. (Doc. 13, Am. Compl. ¶ 140). While we agree with the defendants that the pleadings do not establish unusually suggestive temporal activity, we do find that these allegations demonstrate a pattern of antagonism following her request for protected leave.

Next, we look at whether the plaintiff has demonstrated a causal connection between her requests to take FMLA leave for her own disabilities and her termination in April of 2017. On numerous occasions, the dates of which are unspecified, the plaintiff requested that the defendants provide her FMLA leave for her disabilities. (Id. ¶ 40). The amended complaint clearly alleges, however, that the last time that the plaintiff made this request was one week before her termination. (Id. ¶ 42). Thus, we find that here the plaintiff has successfully demonstrated an unusually suggestive temporal proximity between the two events.

As such, we find that the plaintiff's amended complaint properly pleads a causal link between the plaintiff's involvement in protected activities and the adverse employment actions she suffered from. The defendants' motion to dismiss plaintiff's FMLA retaliation claim fails.

**Conclusion**

For the foregoing reasons, the defendants' partial motion to dismiss (Doc.15) will be denied. An appropriate order follows.

**BY THE COURT:**

**Date: March 14, 2019**

**s/ James M. Munley_____**
**JUDGE JAMES M. MUNLEY**
**United States District Judge**